| DISTRICT COURT, CITY AND COUNTY OF DENVER, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, Colorado 80202 | EFILED Document<br>CO Denver County District Court 2nd JD<br>Filing Date: Nov 22 2010 1:30PM MST<br>Filing ID: 34483338<br>Review Clerk: Cameron M Munier |
|---|---|
| KYLE MERLIN GILMAN,<br><br>Plaintiff,<br><br>v.<br><br>LOOMIS ARMORED US, LLC, et al.,<br><br>Defendants. | Case No. 10CV1767<br><br><br>COURTROOM 3 |
| **ORDER** ||

For the reasons articulated below, Defendants' "Motion to Dismiss First Amended Complaint," filed June 7, 2010, is GRANTED IN PART AND DENIED IN PART.

I. INTRODUCTION

Plaintiff was an employee of Defendant Loomis Armored US, and one of his job responsibilities was to count money delivered to the Loomis facility by Loomis armored cars. Plaintiff claims that on March 5, 2009, the four individual Defendants falsely accused him of stealing money, imprisoned him and attempted to force him to confess, called the police and then reported their false allegations to police when they responded. Plaintiff claims that as a direct result of these false allegations, he was arrested that day for felony theft (F4) and jailed for one day until he made his bail. He claims that Defendants failed to provide police or prosecutors with exculpatory evidence in their possession, including the fact that the thefts continued after Plaintiff no longer worked at Loomis. Plaintiff claims that on March 19, 2009, the Adams County District



Attorney's office decided not to file the case. Plaintiff claims that Loomis suspended him on March 5, 2009, and that on April 9, 2009 Loomis terminated his employment, effective March 5, 2009, despite knowing the allegations were false and the charges had not been filed, and in fact characterized that termination as being "for cause" for the specific purpose of preventing Plaintiff from collecting unemployment benefits and getting new work.

In his First Amended Complaint, Plaintiff asserts the following claims against the following Defendants:

| Claim No. | Claim | Defendant |
|---|---|---|
| 1 | Malicious prosecution | All |
| 2 | False imprisonment; false arrest | All |
| 3 | Outrageous conduct | All |
| 4 | Defamation | All |
| 5 | Wrongful termination; outrageous conduct | Loomis only |

Defendants make three arguments: 1) the non-defamation claims fail because they are barred by workers' compensation exclusivity; 2) the defamation claim fails because the allegedly defamatory statements are absolutely privileged; and 3) the outrageous conduct claims fail to state cognizable claims for relief. I agree with Defendants that the First (malicious prosecution), Second (false imprisonment; false arrest) and Third (outrageous conduct) Claims for Relief are all barred by workers' compensation exclusivity. I also agree that defamation alleged in the Fourth Claim is absolutely privileged. But I do not agree that the Fifth Claim for Relief (wrongful termination/outrageous conduct) is barred or that it fails to state a claim.

II.   STANDARDS

Motions to dismiss are disfavored, and may be granted only when, assuming all the allegations of the complaint are true, the plaintiff would still not be entitled to any relief under any cognizable legal theory. *See, e.g., Rosenthal v. Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1099

(Colo. 1995); *Berenergy Corp. v. Zab, Inc.*, 94 P.3d 1232, 1237 (Colo. App. 2004). Moreover, with respect to the issue of workers' compensation exclusivity, and particularly when addressing whether the employee was performing services "arising out of and in the course of" his or her employment., which I do below, our appellate courts have cautioned that that inquiry is intensely fact-driven, is therefore particularly unsuited for 12(b) dismissal, and that such motions should ordinarily be treated as motions for summary judgment unless this inquiry is absolutely clear from the face of the complaint. *Popovich v. Irlando*, 811 P.2d 379, 385 (Colo. 1991).

III.    WORKERS' COMPENSATION EXCLUSIVITY

The exclusive-remedy provisions of the Workers' Compensation Act, §§ 8-41-101 et seq., bar civil actions for injuries that are compensable under the Act. §§ 8-41-102 and -104. To be compensable under the Act, and thus barred in tort, a claimant must, at the time of the injury, have been an employee and must have been performing services "arising out of and in the course of" his or her employment. § 8-41-301(1). The phrases "arising out of" and "in the course of" are not synonymous, but refer to different inquiries, both of which must be satisfied before the injuries will be compensable in workers' compensation and thus barred in tort. *Horodyskyj v. Karanian*, 32 P.3d 470, 475 (Colo. 2001).

The "in the course of" requirement is focused on the employee, and refers to the time, place and circumstances under which the employee was injured. Generally, an employee has been injured "in the course of employment" if he or she was injured during the time of employment and while conducting an activity connected with employment. *Id.* The "arising out of" requirement, by contrast, is focused on the injury, and refers to the connection between the employment activity and the causes of the injury. Generally, an injury is one "arising out of" employment if it has origins in

the employee's work-related functions and is "sufficiently related to those functions to be considered part of the employee's employment." *Id.*

When an employee is intentionally injured by co-employees, the "sufficiently related" part of the "arising out of" inquiry can be difficult. The mere fact that the injury was caused by a co-employee does not mean it arose out of the employee's employment. Instead, our appellate courts have directed us to consider three kinds of intentional injuries by co-employees: 1) those that have an inherent connection with the employment (these are compensable and are therefore barred from tort recovery); 2) those that are inherently private (these are not compensable and are therefore not barred from tort recovery); and 3) those that are neutral (these are compensable and are therefore barred from tort recovery). *Id.*; *Popovich v. Irlando*, supra, 811 P.2d at 383; *In re Questions Submitted by U.S. Court of Appeals*, 759 P.2d 17, 23-24 (Colo. 1988) (*"Tolbert"*).

As for Plaintiff's claims against the individual Defendants, the Act itself does not expressly extend workers' compensation exclusivity to claims against co-employees. But our appellate courts have long read such co-employee immunity into the Act. *Kandt v. Evans*, 645 P.2d 1300, 1305 (Colo. 1982); *Sieck v. Trueblood*, 485 P.2d 134 (Colo. App. 1971). That is, if a respondeat superior claim against an employer based on acts of co-employees is barred by workers' compensation exclusivity, then so are those underlying claims directly against the co-employees. *Ventura v. Albertson's, Inc.*, 856 P.2d 35, 39 (Colo. App. 1992).

Before I apply these tests to this case, let me first address Plaintiff's argument that his claims are not barred simply because he seeks damages only for emotional, not physical, injury. Our workers' compensation statute makes no such distinction, and no reported cases do. The Act covers "personal injury or death," § 8-41-301(1), and Plaintiff is simply incorrect to suggest that "personal injury" means physical injury. I know some commentators have suggested that,

4

including Larsen, but that divide between physical and non-physical injury is simply not recognized by our statute or by our cases. Indeed, if that were a dispositive distinction, then the three-classifications analysis of *Tolbert* and *Popovich* would largely be unnecessary. Remember, Ms. Popovich claimed she was subjected to sexually harassing *verbal* insults, which caused her to suffer severe anxiety and depression. These "assaults" were non-physical and her injuries purely emotional, though she claimed the emotional injuries had physical manifestations in the form of anxiety and depression. *Popovich, supra,* at 380. If claims for purely non-physical insult are never barred by workers' compensation exclusivity, then the *Popovich* Court needed only to say that, rather than remanding the case for application of the three-classification approach.

It is clear to me, and I conclude, that the claims for malicious prosecution (First Claim for Relief), false imprisonment (Second Claim for Relief) and outrageous conduct claim (Third Claim for Relief) are each barred by workers' compensation exclusivity. However, I cannot say that the wrongful termination / outrageous conduct claim as alleged (Fifth Claim for Relief) is so clearly barred that I can dismiss it on this Rule 12(b) motion.

The injuries complained of in the first three of these claims certainly occurred "in the course of" Plaintiff's employment at Loomis. All of the Defendants' acts complained in those first three claims occurred on a single day, March 9, 2009, at the Loomis premises while Plaintiff was working there. Plaintiff claims the false information Defendants gave to police on that day at the Loomis premises led to his arrest on that day at the Loomis premises, that Defendants falsely imprisoned him on that day at the Loomis premises while they waited for the police to arrive, and that these actions on that day and at the Loomis premises were outrageous. I conclude, as a matter of law, that the injuries alleged in these three claims were all clearly suffered by Plaintiff "in the course of" his employment at Loomis.

But the wrongful termination / outrageous conduct claim (Fifth Claim for Relief) is not based on injuries suffered "in the course of" Plaintiff's employment. These injuries, unlike the ones for the first three claims, were not all suffered on a single day, and none of them was suffered by Plaintiff while he was working. In fact, some of them—Plaintiff's claimed difficulty with unemployment insurance allegedly caused by Loomis' characterization of the termination as "for cause"—happened long after Plaintiff had been terminated. Even the termination itself did not occur until April 2009, at a time Plaintiff was not working because he had been suspended, and the termination was effected by Loomis sending a letter to Plaintiff. That termination itself was therefore not "in the course of" Plaintiff's employment. *Archer v. Farmers Bros. Co.*, 70 P.3d 495, 498 (Colo. App. 2003) (termination of employee at his residence while he was not working not "in the course" of employment), *aff'd on different grounds*, 90 P.3d 228 (Colo. 2004).

Likewise, the "arises out of" requirement has clearly been met for the first three of these claims. All three have their origins in Plaintiff's alleged theft, a theft that Defendants claim Plaintiff committed at, and indeed as part of, his work at Loomis. They all have an inherent connection with Plaintiff's employment, within the meaning of the *Tolbert/Popovich* classification scheme. Indeed, they all arose out of allegations about Plaintiff's conduct in his employment. I cannot imagine a clearer example of a co-employees' alleged tortious act "arising out of" employment than when that acts is itself a reaction to Plaintiff's own alleged workplace conduct. Because of my conclusion that the Fifth Claim for Relief does not state an injury suffered "in the course of" Plaintiff's employment, it is not barred for that reason alone, and I need not, and do not, address the question of whether it also "arose out of" Plaintiff's employment.

Finally, I reject Plaintiff's argument that workers' compensation exclusivity is no bar because Loomis failed to give the division notice of Plaintiff's injuries as required by § 8-43-

103(1). That statute does not require notice as a condition to the bar, and Plaintiff cites no cases, and I am unaware of any, that suggest that notice by the employer is required before it may raise exclusivity as a bar.

IV.   DEFAMATION

Defendants argue that the defamation claim fails as a matter of law because Defendants' statements to the Aurora police, on which the defamation claim is exclusively based, are absolutely privileged. I agree.

Colorado has long recognized the so-called judicial proceedings privilege against defamation. This common law privilege absolutely immunizes against defamation claims "all persons who are integral to the judicial process." *Stepanek v. Delta County*, 940 P.2d 364, 368 (Colo. 1997), *quoting Briscoe v. LaHue*, 460 U.S. 325, 335 (1983). See also RESTATEMENT (SECOND) OF TORTS §§ 587 and 588, first cited with approval in *Department of Admin. v. State Personnel Bd.*, 703 P.2d 595, 597-98 (Colo. App. 1985):

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.
>
> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

The question here, under this RESTATEMENT language, is whether a complaining witness's statement to investigating police is "preliminary to a proposed judicial proceeding." Comment b to § 587 addresses this very question by opining that the privilege applies to "informal complaints made to prosecuting attorney *or other proper officers* preliminary to a proposed criminal

prosecution *whether or not the information is followed by a formal complaint or affidavit* [emphasis added]."

Plaintiff is quite correct that this Comment b has never been expressly adopted (or rejected) in any published Colorado case, and that the phrase "proposed criminal prosecution" suggests that it might not apply to an initial complaining witness before any prosecution has been "proposed." But in fact, the very first published Colorado case recognizing the general common law privilege for judicial proceedings did so by holding that a complaining witness—who made complaints to a police department—was absolutely immune from a subsequent defamation suit by the target of his complaints. *McLarty v. Whiteford*, 496 P.2d 1071, 1072-73 (Colo. App. 1972). And although it is true that *McLarty* involved complaints about the plaintiff's suitability for a liquor license and not a criminal complaint, the significance of the case is that the judicial proceedings privilege was held to apply to a witness making a complaint to police.

Plaintiff's "proposed prosecution argument" is belied by Comment b's express indication that the privilege applies regardless of whether the statements lead to any formal complaint (that is, any formal criminal prosecution) or affidavit (say, in support of a search or arrest warrant). And in fact, although Colorado has not had an opportunity to apply the judicial proceedings privilege to an initial complaining witness whose complaints then triiger an investigation and eventual criminal filing, many other states have. *See, e.g., Benitez v. American Standard Circuits, Inc.*, 2009 WL 742686 at *7 (N.D. Ill. 2009) ("statements made to police officers regarding the commission of a crime are protected by an absolute privilege"). *Accord*: *Ledvina v. Cerasani*, 146 P.3d 70, 72-75 (Ariz. App. 2006); *Hagberg v. California Fed. Bank*, 81 P.3d 244, 249-52 (Cal. 2004) (though based on statute); *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1106-08 (Ill. App. 1991); *McGranahan v. Dahar*, 408 A.2d 121., 128-29 (N.H. 1979). In fact I have not found, and

Plaintiff has not cited, any case in which a court, when asked, was unwilling to apply the judicial proceeding privilege to statements given to police by a complaining witness.

Most of these cases recognize that, because making false statements to police is already criminal, the additional deterrent value of making them actionable in tort is vastly outweighed by the costs of turning criminal issues into expensive and time-consuming civil ones. Truthful witness-complainants will not likely be chilled by a criminal law under which the statements must be proved false beyond a reasonable doubt; they certainly will be chilled by a civil litigation system that typically costs more to get through than the amount at issue.

I therefore conclude that Defendants' statements to the Aurora police are absolutely privileged, and therefore that Plaintiff's defamation claim fails as a matter of law.

V. THE REMANING OUTRAGEOUS CONDUCT CLAIM

In Part III above I have declined to dismiss the Fifth Claim for Relief as barred by workers' compensation exclusivity. Defendants ask alternatively that I dismiss this claim because the facts alleged do not rise to the level of outrageousness. I am not comfortable dismissing this claim on this 12(b) motion.

It is true that trial judges play an important gate-keeping role in making sure that the facts as pleaded are sufficiently outrageous to rise to the point at which ordinary citizens would view them as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999), *quoting Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970). Here, Plaintiff alleges not only that he was wrongfully terminated (which by itself would certainly not be enough under *Coors Brewing*), but also that Loomis terminated him specifically to cover up the falsity of the other Defendants' statements to the police. First Amended

Complaint ¶ 134. He also alleges that after the termination Loomis falsely represented that the termination was for cause, knowing that the underlying allegations were false and that the criminal allegations were dropped, with the specific intention that by doing so Loomis would not be able to obtain unemployment benefits or find new work. Id. at ¶ 133. He also alleges that Defendants withheld exculpatory information from police. Id. at ¶ 75.

In my judgment, these allegations if true, and taken as a whole, state a claim of sufficient outrageousness to survive this 12(b) motion. *See Meiter v. Cavanaugh*, 580 P.2d 399, 401 (Colo. App. 1978) (group of allegations, none of which separately may be outrageous, may be outrageous when considered as a whole).

## VI. CONCLUSION

Plaintiff's First, Second, Third and Fourth Claims for Relief are HEREBY DISMISSED WITH PREJUDICE. Defendant Loomis shall answer the remaining Fifth Claim for Relief by December 8, 2010.

DONE THIS 22ND DAY OF NOVEMBER, 2010.

BY THE COURT:

*[signature]*

Morris B. Hoffman
District Court Judge

cc: All counsel